DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
ALEXANDER B. PARKER (S.B. #264705)
aparker@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3823
Telephone:    +1 415 984 8700
Facsimile:    +1 415 984 8701

Attorneys for Plaintiffs
SolarEdge Technologies Inc. and
SolarEdge Technologies Ltd.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SolarEdge Technologies Inc. and SolarEdge Technologies Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> Enphase Energy, Inc., <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR** <br><br> **(1) Trademark Infringement (Lanham Act § 32, 15 U.S.C. § 1114)** <br><br> **(2) False Advertising (Lanham Act § 43(a), 15 U.S.C. § 1125(a))** <br><br> **DEMAND FOR JURY TRIAL** |

1    Plaintiffs SolarEdge Technologies, Inc. and SolarEdge Technologies Ltd. (collectively, "SolarEdge") bring this action against defendant Enphase Energy, Inc. ("Enphase") based on its false and misleading advertising and its infringement of SolarEdge's legally protected and federally registered trademarks. SolarEdge seeks injunctive, compensatory, and punitive relief.

## THE PARTIES

1. Plaintiff SolarEdge Technologies, Inc. ("SolarEdge Inc.") is a Delaware corporation with its principal place of business located at 1 HaMada Street, POB 12001, Postal code 4673335, Herzliya, Israel.

2. Plaintiff SolarEdge Technologies Ltd. ("SolarEdge Ltd.") is an Israeli Limited Liability Company with its principal place of business located at 1 HaMada Street, POB 12001, Postal code 4673335, Herzliya, Israel. SolarEdge Ltd. is a wholly owned subsidiary of SolarEdge Inc.

3. On information and belief, defendant Enphase Energy Inc. is a Delaware corporation with its principal place of business located at 1420 N. McDowell Boulevard, Petaluma, CA 94954. Enphase is therefore a resident of this District.

## JURISDICTIONAL STATEMENT

### Jurisdiction

4. Subject-matter jurisdiction is proper because this is an action for violations of rights granted under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* Specifically, this action is based on Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. §§ 1116 and 1121, and 28 U.S.C. §§1331 and 1338.

5. The Court has personal jurisdiction over Enphase because Enphase maintains its principal place of business within this district. The Court also has personal jurisdiction over Enphase because the acts that are the subject of this complaint were committed at least in part in this District.

### Venue

6. Venues is proper in this District under 28 U.S.C. § 1391(a) because Enphase

resides in this district and is subject to personal jurisdiction in this district. Venue is also proper in this District under 28 U.S.C. § 1391(b) because the acts that are the subject of this complaint were committed at least in part in this District.

**Intradistrict Assignment**

7. Pursuant to Civil L.R. 3-2(c) and General Order No. 44, this case is properly assigned to any division of this Court because it involves a claim for trademark infringement.

**FACTUAL ALLEGATIONS**

**SolarEdge and Solar Power Systems**

8. SolarEdge is in the business of researching, developing, manufacturing, and selling electronic components for solar photovoltaic ("PV") modules, which are often referred to as "solar panels."

9. PV modules are the panels, generally installed on rooftops, that absorb and convert solar energy to direct electric current ("DC"). A device known as an "inverter" is necessary to transform the electric current from DC to alternating current ("AC"), the type of power delivered to residences and businesses through the power grid.

10. Most PV systems employ multiple solar panels and, historically, the PV industry connected multiple panels to one or a small number of centralized inverters for the DC to AC conversion.

11. Currently, SolarEdge's primary products are components involved in the optimization of energy generated from solar panels, monitoring and safety features related to this optimization, and the conversion of the generated energy from DC to AC. SolarEdge makes and sells devices called "power optimizers." A power optimizer is used for each solar panel, and multiple power optimizers are used in combination with a simplified centralized inverter. Because a power optimizer is connected to each solar panel, power optimizers are considered "panel-level" electronics.

12. The general practice of situating electronics at the solar-panel level is sufficiently common that the industry has coined the acronym "MLPE" ("module-level power electronics") to refer to electronics situated at the solar-panel level of a PV system.

- 3 - COMPLAINT FOR TRADEMARK INFRINGEMENT & FALSE ADVERTISING

13. Since beginning commercial shipments in 2010, SolarEdge has grown to become a global leader in the PV industry. SolarEdge has shipped approximately 4.7 gigawatts of its inverter systems (more than 15 million power optimizers), the vast majority of which are installed in the United States.

14. For at least five years, SolarEdge has used the stylized mark shown below (the "Stylized Mark") as its primary logo and brand identifier.



15. SolarEdge Ltd. owns U.S. Trademark Registration No. 4,409,186 for the Stylized Mark. A copy of the Certificate of Registration for the Stylized Mark is attached as **Exhibit 1**.

16. SolarEdge Ltd. also owns U.S. Trademark Registration No. 3,966,641 for the standard character mark SOLAREDGE (the "SOLAREDGE Mark," and collectively with the Stylized Mark, the "SolarEdge Marks"). A copy of the Certificate of Registration for the Stylized Mark is attached as **Exhibit 2**.

17. SolarEdge Ltd. has granted to SolarEdge Inc. a license to use the SolarEdge Marks, including within the United States.

18. Both trademark registrations are valid and protectable.

19. SolarEdge has invested significantly in building consumer recognition of its brand, with sales and marketing costs for fiscal years 2014, 2015, and 2016 of $17.7 million, $24.9 million, and $34.8 million, respectively. As a result of SolarEdge's longstanding investment in its brand, the SolarEdge Marks are well-known and valuable trademarks, with widespread marketplace recognition as designations of SolarEdge and its products.

**Enphase**

20. Defendant Enphase also sells PV inverter components and is a direct competitor to SolarEdge.

21. Instead of a centralized inverter, Enphase uses "microinverter" technology, which

COMPLAINT FOR TRADEMARK
INFRINGEMENT & FALSE ADVERTISING

locates a small inverter at each solar panel.

22. Microinverters, like power optimizers, panel-level electronics, AKA "MLPEs."

**Embedded vs. Non-Embedded Electronics**

23. A further development of MLPE technology is to "embed" either a power optimizer or a microinverter into a solar panel before the panel leaves the factory of the panel manufacturer. This embedding process reduces the time required to install a PV system at an end user's residential or commercial location, because it is no longer necessary to separately install a power optimizer or microinverter for each solar panel in the system.

24. The process of embedding a panel-level component into a PV panel was first introduced by SolarEdge to solar panel manufacturers in 2011. Embedded SolarEdge power optimizers have been continuously available from solar panel manufacturers since at least as early as 2012.

25. SolarEdge's power optimizers continue to be available in standalone form—in other words, not embedded in a PV panel. In fact, SolarEdge is known primarily for its non-embedded optimizers, as embedded technology is still not widely used in the PV industry.

26. Enphase has recently announced that one of its microinverters will now be available in two forms as well: (1) separate from solar panels (requiring integration at installation time), which is the way that Enphase had sold its products since its inception, and (2) embedded into a solar panel by one of two panel manufacturers.

**Enphase's False And Misleading Advertising Campaign**

27. Enphase recently launched a new advertising campaign using video, audio, and text to promote a product called the "Enphase AC Module"—a solar panel with an embedded Enphase microinverter. The video for the campaign, titled "Enphase Energized AC Module vs. String+Optimizers" (the "Time-Lapse Video"), purports to depict a time-compressed video comparison between the installation times for PV systems using comparable SolarEdge and Enphase products. A true and correct copy of the Time-Lapse Video will be filed conventionally as **Exhibit 3**. A transcript of the audio of the Time-Lapse Video is attached as **Exhibit 4**.

28. SolarEdge's Stylized Mark is prominently shown throughout the purported

COMPLAINT FOR TRADEMARK
INFRINGEMENT & FALSE ADVERTISING

"competition" between the two PV system installations, with the captured frame below being an example:

[image of time-lapse video comparison frames showing SolarEdge and Enphase installations at 00:02:19]

29.  SolarEdge has not consented to Enphase's use of the Stylized Mark in any capacity, including within the Time-Lapse Video.

30.  The video purports to show that the installation of a PV system using Enphase's recently announced embedded microinverter product takes half the time of a comparable SolarEdge optimizer-based system. For example, the video is accompanied on Enphase's website with the text "Stop wasting time installing optimizers—***When compared to optimizers***, the Enphase AC Module cuts rooftop installation time in half. See for yourself" (emphasis added). In other words, Enphase tells viewers that choosing a PV system that uses SolarEdge's power optimizers rather than the Enphase AC Module will necessarily double their installation time. A true and correct copy of the webpage where the Time-Lapse Video is available on Enphase's website is attached as **Exhibit 5**.



COMPLAINT FOR TRADEMARK
INFRINGEMENT & FALSE ADVERTISING

31. In the Time-Lapse Video, the installer also provides commentary that states, in part:

> Do I see a time difference between the two systems? Absolutely, yes. Yeah, it's a plug and play. It's lay a panel down and go to the next one, very fast installation. I like it. There is no comparison. You're skipping all these steps. The micro is already attached to the panel. I don't have to worry about laying out optimizers or micros on a rail, and obviously that phase doesn't have an inverter hanging on the side of your wall. That's one less thing. That's what I like. It was easy to manage. You didn't have to bring some PV wire out. It's make a couple marks, lay these panels and go. I would most definitely use the LG AC Module [with embedded Enphase microinverter].

32. Finally, the video ends with the text: "The Enphase Energized AC Module cuts installation time in half."

33. The Time-Lapse Video presents a false and materially misleading comparison. A fair comparison would test systems that both employ embedded products: Enphase's embedded microinverters and SolarEdge's embedded power optimizers. The Time-Lapse Video, however, unfairly compares Enphase's *embedded* microinverters with SolarEdge's *non-embedded* power optimizers.

34. Enphase's advertising campaign is thus literally false, because the test relied on does not and cannot establish that a PV system using Enphase's product installs twice as quickly as optimizer-based PV systems as a class. A fair comparison of the installation time of a system using Enphase's embedded microinverters with that of a system using SolarEdge's embedded power optimizers would demonstrate that any time differential is substantially smaller (and it is not obvious in whose favor that difference would be).

35. Consumers are likely to be deceived into incorrectly believing that a system using Enphase microinverters inherently installs faster than a system using SolarEdge power optimizers.

36. By presenting the Time-Lapse Video as a demonstration of the time-saving advantages of Enphase's embedded microinverters versus power optimizers generally, Enphase's advertising campaign also falsely and necessarily implies that SolarEdge's power optimizers are not available in embedded form.

COMPLAINT FOR TRADEMARK INFRINGEMENT & FALSE ADVERTISING

37. The installer's statement that the lack of a centralized inverter "hanging on the side of your wall" is "one less thing" in the Enphase installation process is also misleading. The Enphase system requires the installation of a separate box, called the Enphase Envoy, that is used for monitoring the individual microinverters and communicating with Enphase's servers.

38. Enphase's advertising campaign is likely to influence purchasing decisions. While there are a number of factors relevant to choosing a PV inverter system, with all other factors equal, reducing the time of installation may reduce an installer's costs, increase efficiency, and increase profits. For the end user, a faster, simpler installation may be expected to translate into savings on installation costs. Enphase has represented that this is the case on its website, stating that using the Enphase AC Module "mak[es] installations more cost-effective and faster" and that "[t]his means a faster experience for [installers] and a greater savings for [their] customer[s]."

39. Enphase has caused the false advertisement to enter interstate commerce by publishing it in multiple locations: its own website, on Twitter, on YouTube, and on Facebook. SolarEdge is informed and believes that Enphase likely also showed the false advertisement at the Intersolar North America trade show, which took place in San Francisco from July 10–13, 2017. Enphase introduced its embedded product at Intersolar, and Enphase representatives engaged in promotional activities at the trade show.

40. By claiming to prove that Enphase's embedded microinverters are superior to SolarEdge's optimizers in ways that are likely to influence purchasing decisions, Enphase's campaign of false advertising is also likely to directly divert sales and customer interest from SolarEdge to Enphase.

41. On July 12, 2017, SolarEdge sent to Enphase, through counsel, a letter requesting that Enphase promptly cease and desist from disseminating the advertising campaign, because it makes false claims and because it infringes SolarEdge's Stylized Mark. A copy of that letter is attached as **Exhibit 6**.

42. On July 14, 2017, Enphase responded to SolarEdge, through counsel, indicating that Enphase would not stop disseminating the advertising campaign. A copy of that letter is attached as **Exhibit 7**.

## FIRST CAUSE OF ACTION

**(Trademark Infringement of a Registered Mark – Lanham Act § 32, 15 U.S.C. § 1114)**

43. SolarEdge hereby incorporates by reference the above allegations of this complaint as if set forth fully herein.

44. SolarEdge owns U.S. Trademark Registration No. 4,409,186 for the Stylized Mark and U.S. Trademark Registration No. 3,966,641 for the SOLAREDGE Mark.

45. SolarEdge is presently using the SolarEdge Marks in commerce in the United States in connection with the sale, offering for sale, distribution, and advertising of PV system components.

46. SolarEdge has not consented to Enphase's use of the Stylized Mark.

47. Enphase's use of the Stylized Mark is likely to cause confusion, mistake, and deception by creating the false and misleading impression that SolarEdge has sponsored, endorsed, or approved the Time-Lapse Video, or that SolarEdge sponsored, endorsed, approved, or participated in the optimizer-based installation shown in the Time-Lapse Video.

48. It is not necessary for Enphase to use the Stylized Mark to identify the product in question. The title of the Time-Lapse Video ("Enphase Energized AC Module vs. String+Optimizers") and the accompanying text ("When compared to optimizers, the Enphase AC Module cuts rooftop installation time in half") suggest that Enphase intends to make a comparison to power optimizers generally—not any brand of optimizer in particular.

49. The above-described acts and practices constitute trademark infringement of the SolarEdge Marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

50. On information and belief, Enphase's conduct was undertaken willfully in the first instance. Enphase has refused to cease its infringing conduct following notice from SolarEdge, and Enphase's continued infringement is therefore willful.

51. SolarEdge has been or is likely to be injured by Enphase's conduct. This injury includes direct diversion of sales from SolarEdge to Enphase, injury to SolarEdge's reputation, and loss of goodwill associated with SolarEdge's marks, brand, and products.

52. Unless Enphase's infringing conduct is enjoined by this Court, the consuming

public will continue to be confused and SolarEdge will suffer a loss of consumer confidence, sales, revenue, and goodwill, to the irreparable injury of SolarEdge.

53. SolarEdge has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

54. Pursuant to 15 U.S.C. § 1117(a), SolarEdge is also entitled to recover (i) Enphase's profits, (ii) SolarEdge's ascertainable damages, and (iii) SolarEdge's costs of suit. Furthermore, Enphase's willful infringement of the Stylized Mark in connection with false statements of fact about products sold by SolarEdge in connection with the Stylized Mark renders this an exceptional case and entitles SolarEdge to its reasonable attorney fees.

## SECOND CAUSE OF ACTION

**(False Advertising – Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

55. SolarEdge hereby incorporates by reference the above allegations to this complaint as if set forth fully herein.

56. Enphase is making false, misleading, and deceptive representations of fact in its advertising campaign for the Enphase AC Module.

57. Enphase's campaign misrepresents the nature, characteristics, and qualities of Enphase's and SolarEdge's products.

58. The above-described acts and practices constitute violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). On information and belief, Enphase's conduct was undertaken willfully. Enphase has refused to cease its conduct following notice from SolarEdge, and Enphase's continued conduct is therefore willful.

59. SolarEdge has been or is likely to be injured by Enphase's conduct. This injury includes direct diversion of sales from SolarEdge to Enphase, injury to SolarEdge's reputation, and loss of goodwill associated with SolarEdge's marks, brand, and products.

60. Unless Enphase is enjoined by this Court from continuing to make false, misleading and deceptive representations of fact in its advertising campaign, the consuming public will continue to be confused and SolarEdge will suffer a loss of consumer confidence, sales, revenue, and goodwill, to the irreparable injury of SolarEdge.

61. SolarEdge has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

62. Pursuant to 15 U.S.C. § 1117(a), SolarEdge is also entitled to recover (i) Enphase's profits, (ii) SolarEdge's ascertainable damages, and (iii) SolarEdge's costs of suit. Furthermore, Enphase's willful infringement of the Stylized Mark in connection with false statements of fact about products sold by SolarEdge in connection with the Stylized Mark renders this an exceptional case and entitles SolarEdge to its reasonable attorney fees.

## PRAYER FOR RELIEF

SolarEdge respectfully requests that the Court:

A. Issue a temporary restraining order, and a preliminary and permanent injunction, ordering that Enphase, its successors, affiliates, agents, officers, employees, consultants, and representatives, and all others in active concert or participation with Enphase, refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional or advertising materials containing any use of SolarEdge's Stylized Mark;

B. Issue a temporary restraining order, and a preliminary and permanent injunction, ordering that Enphase, its successors, affiliates, agents, officers, employees, consultants, and representatives, and all others in active concert or participation with Enphase, refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional or advertising materials containing any false or misleading facts about SolarEdge or its products, including without limitation false and misleading comparisons between either SolarEdge's products and Enphase's products or between power optimizer technology and microinverter technology, and including without limitation the video titled "Enphase Energized AC Module vs. String+Optimizers" and associated text and audio;

C. Award SolarEdge:

    i. Enphase's profits, gains, and advantages derived from Enphase's unlawful conduct;

    ii. all damages sustained by SolarEdge by reason of Enphase's unlawful conduct, including all expenditures required to correct the false,

|   |   |   |
|---|---|---|
| | | misleading, deceptive, and unfair statements by Enphase and the misappropriation of SolarEdge's Stylized Mark; |
| | iii. | additional compensation in such sum as the court shall find to be just pursuant to 15 U.S.C. § 1117; |
| | iv. | trebled damages pursuant to 15 U.S.C. § 1117; |
| | v. | exemplary and punitive damages as the Court finds appropriate to punish Enphase's misconduct and deter any future willful conduct; and |
| | vi. | interest on the foregoing sums; |
| D. | | Award SolarEdge attorneys' fees and costs and disbursements of this action; and |
| E. | | Grant such other and further relief as the Court deems just and proper. |

Dated: July 18, 2017                    O'MELVENY & MYERS LLP


                                        By:   */s/ David R. Eberhart*
                                              DAVID R. EBERHART
                                        Attorneys for Plaintiffs
                                        SolarEdge Technologies Inc. and
                                        SolarEdge Technologies Ltd.

**JURY DEMAND**

SolarEdge Technologies Inc. and SolarEdge Technologies Ltd. respectfully request a jury trial on all issues triable thereby.

Dated: July 18, 2017                                     O'MELVENY & MYERS LLP


                                                         By:   /s/ David R. Eberhart
                                                                  DAVID R. EBERHART
                                                         Attorneys for Plaintiffs
                                                         SolarEdge Technologies Inc. and
                                                         SolarEdge Technologies Ltd.