1    COOLEY LLP
     JOHN W. CRITTENDEN (101634) (jcrittenden@cooley.com)
2    CHANTAL Z. HWANG (275236) (chwang@cooley.com)
     101 California Street, 5th Floor
3    San Francisco, CA  94111-5800
     Telephone:    (415) 693-2000
4    Facsimile:    (415) 693-2222

5    Attorneys for Defendant
     Enphase Energy, Inc.

6

7

8                         UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11   SolarEdge Technologies, Inc. and SolarEdge        Case No.  4:17-cv-04047-YGR
     Technologies Ltd.,
12                                                      **DEFENDANT ENPHASE ENERGY, INC.'S
                     Plaintiffs,                        MEMORANDUM OF POINTS AND
13                                                      AUTHORITIES IN OPPOSITION TO
              v.                                        PLAINTIFFS' MOTION FOR PRELIMINARY
14                                                      INJUNCTION**
     Enphase Energy, Inc.,
15                                                      Date:    August 4, 2017
                     Defendant.                         Time:    10:00 a.m.
16                                                      Courtroom:  1, 4th Floor
                                                        Judge:   Hon. Yvonne Gonzalez Rogers
17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

DEFENDANT ENPHASE ENERGY'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

TABLE OF CONTENTS

I.    Introduction. ......................................................................................................................... 1

II.   Factual Background. ............................................................................................................ 2

      A.    Enphase And SolarEdge Are Direct Competitors Who Use Different Technologies For
            Converting Solar Energy To Alternating Current Electricity. ........................................ 2

      B.    How Enphase Conceived And Developed Its Truthful And Non-Misleading Time-Lapse
            Video Ad. ....................................................................................................................... 3

      C.    The Harm An Injunction Would Cause Enphase, Its Third-Party Partners, And
            Customers. ...................................................................................................................... 8

III.  SolarEdge Has Not Met The Standard For Granting Injunctive Relief. ................................. 9

IV.   SolarEdge Has Not Established That It Is Likely To Succeed On the Merits. ...................... 10

      A.    SolarEdge Has Failed To Show That The Ad Is Materially False Or Misleading, And
            Thus Is Not Likely To Succeed On The Merits Of Its False Advertising Claim............. 10

            1.    SolarEdge Has Failed To Identify Any Materially False or Misleading Statements In
                  the Video; Rather It Objects To Purported Implications The Ad Does Not Actually
                  Make. ..................................................................................................................... 10

            2.    SolarEdge Has Failed To Establish That The Video Is A Likely To Deceive A
                  Substantial Segment Of Rooftop Solar Installers. ...................................................... 13

            3.    SolarEdge Has Failed To Establish That The Video Contains A Deception That Is
                  Material To Installers' Purchasing Decision. ............................................................. 14

            4.    Enphase Has Caused Its Advertisement To Enter Interstate Commerce. ................... 14

            5.    SolarEdge Has Failed To Show That A False Statement In The Time-Lapse Video
                  Has Caused, Or Is Likely To Cause, A Diversion Of Its Sales Or A Loss Of
                  Goodwill. ............................................................................................................... 15

      B.    Enphase Only Made Nominative Fair Use Of SolarEdge's Trademark, And Thus
            SolarEdge Is Not Likely To Succeed On The Merits Of Its Trademark Infringement
            Claim. ........................................................................................................................... 15

V.    SolarEdge Has Failed To Establish That It Is Likely To Suffer Irreparable Harm If Enphase
      Is Not Enjoined. ................................................................................................................. 16

VI.   SolarEdge Failed To Establish That The Balance of Equities Tips In Its Favor .................. 19

VII.  SolarEdge Has Failed To Establish That the Requested Injunction Is In The Public Interest.20

VIII. Conclusion. ....................................................................................................................... 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

ii.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-cv-04047-YGR

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..................................................................................................10

*Amoco Production Co. v. Gambell*,
480 U.S. 531 (1987)......................................................................................................................9

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*,
No. 91 Civ 731-CSH, 1982 WL 121559 (S.D.N.Y. Jun. 9, 1982) ...............................12

*Dreamwerks Prod. Group v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) ..................................................................................................15

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
765 F.3d 205 (3d Cir. 2014)......................................................................................................17

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
618 F.3d 1025 (9th Cir. 2010) ..................................................................................................15

*Haas Automation, Inc. v. Denny*,
CV 12-04779 CBM, 2014 WL 2966989 (C.D. Cal. July 1, 2014) ...............................18

*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989) ....................................................................................................13

*Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ...................................................................................16, 17, 19

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ....................................................................................................15

*Murray v. Cable NBC*,
86 F.3d 858 (9th Cir. 1996) ......................................................................................................15

*Mushroom Makers, Inc. v. R.G. Barry Corp.*,
580 F.2d 44 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979)................................16

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) ....................................................................................................16

*Playboy Enters., Inc. v. Welles*,
279 F.3d 796 (9th Cir. 2002) ....................................................................................................16

*Pom Wonderful LLC v. Purely Juice, Inc.*,
No. CV-07-02633 CAS, 2008 WL 4222045 (C.D. Cal. Jul. 17, 2008)........................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

iii.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

**Table of Authorities**
(continued)

Page(s)

*San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*,
625 Fed. Appx. 322 (9th Cir. 2015) ...................................................................18

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ..................................................................10, 15

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ...............................................................17, 18

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
60 F.3d 27 (2d Cir. 1995)...........................................................................18

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
793 F.2d 1034 (9th Cir. 1986) ....................................................................13

*VBS Distribution, Inc. v. Nutivita Labs., Inc.*,
No. SACV 16-01553-CJC, 2017 WL 2404919 (C.D. Cal. Jan. 19, 2017) ....................17

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
No. CV 13-1395 GPC BLM, 2014 WL 2106482 (S.D. Cal. May 20, 2014) ...............19

*William H. Morris Co. v. Group W, Inc.*,
66 F.3d 255 (9th Cir. 1995) .........................................................................13

*Williams v. Green Valley RV, Inc.*,
No. 8:15-CV-01010-ODW-MRW, 2015 WL 4694075 (C.D. Cal. Aug. 6, 2015) ..............17

*Winter v. Nat. Res. Def. Counsel, Inc.*,
555 U.S. 7 (2008)....................................................................................9, 10

*Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*,
32 F. Supp. 3d 1088 (N.D. Cal. 2014) ..........................................................13

**Statutes**

15 U.S.C. § 1114...............................................................................................1

15 U.S.C. § 1125(a) ...............................................................................1, 10, 15, 17

1    Defendant Enphase Energy, Inc. ("Enphase") respectfully submits this opposition to the

2    motion of Plaintiff SolarEdge Technologies, Inc. and SolarEdge Technologies Ltd. (collectively,

3    "SolarEdge") for a preliminary injunction in essence prohibiting Enphase from (1) making any use of

4    SolarEdge's stylized trademark and (2) publishing or disseminating a comparison advertising video

5    entitled "Enphase Energized AC Module vs String+Optimizers" (the "Time-Lapse Video").

6    SolarEdge brought the motion as an ex parte motion for a temporary restraining order and order to

7    show cause why a preliminary injunction should not issue (Dkt. No. 8), but the Court ordered that the

8    matter be heard as a motion for preliminary injunction on an expedited schedule.  (Dkt. No. 15.)

9    **I.    INTRODUCTION.**

10    Enphase created the Time-Lapse Video to demonstrate to installers of rooftop photovoltaic

11    systems that a system comprised of its newly-introduced Enphase Energized AC Module solar panels

12    ("AC Module"), which feature embedded microinverters, can be installed in roughly half the time than

13    a traditional system comprising solar panels and separate power optimizers, typical of the vast majority

14    of what SolarEdge sells.  SolarEdge does not contend that the actual comparison between these

15    products was flawed in any way.  Instead, it asserts that Enphase should have tested "comparable

16    products" by comparing installation of a system using Enphase's embedded microinverters with one

17    using SolarEdge's embedded power optimizers.  SolarEdge provides no evidence that these are

18    "comparable products," and in fact they (1) represent only a small portion of SolarEdge's sales and

19    (2) lack several key features that are significant advantages of the Enphase AC Module product.

20    But this is a red herring: the point of the video is to show that the AC Module installs faster

21    than systems with standalone optimizers, which it does truthfully.  No ordinarily prudent solar panel

22    installer would understand it in the contorted way that SolarEdge would interpret it.  Thus SolarEdge

23    is unlikely to succeed on its false advertising claim under Lanham Act § 43(a), 15 U.S.C. § 1125(a).

24    SolarEdge also argues that Enphase's use of the SOLAREDGE (Stylized) trademark (i.e., logo)

25    ("Stylized Mark") infringes the mark in violation of Lanham Act § 32, 15 U.S.C. § 1114, on the theory

26    that this "suggests SolarEdge's sponsorship or endorsement of the Time-Lapse Video." Plaintiff's

27    Memorandum of Points and Authorites in Support of Temporary Restraining Order ("Pl. Mem.") (Dkt.

28    No. 8-1) at 16.  That is implausible: this ad touts the quicker installation time of the AC Module in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929                          1.                    **DEFENDANT ENPHASE ENERGY'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR**

1  comparison with a SolarEdge system requiring standalone optimizers, and no ordinarily prudent solar

2  panel installer would think that SolarEdge sponsored or endorsed a comparison in which its product

3  came up short.  Thus SolarEdge is unlikely to prevail on its infringement claim, too.

4  Finally, even if the Time-Lapse Video was materially false or misleading to solar panel

5  installers or was likely to confuse or deceive them into thinking that SolarEdge was behind it,

6  SolarEdge has provided no concrete evidence of any irreparable harm that it would suffer if the video

7  is not enjoined.  It speculates that the video is "likely to divert sales and customers directly from

8  SolarEdge to Enphase," and Ninth Circuit authority teaches that speculation is not enough to show

9  irreparable harm.  But even if the video did divert sales, and even if the diversion was because the ad

10  was false or misleading or infringing, SolarEdge has an adequate remedy in money damages.  On the

11  other hand, preventing Enphase from advertising its new, game-changing product on the eve of the

12  most important trade show of the year would harm Enphase and its partner solar panel manufacturers,

13  as well as the customers who benefit from fair competition.  Thus the Court should deny the motion.

14  **II.    FACTUAL BACKGROUND.**

15        **A.    Enphase And SolarEdge Are Direct Competitors Who Use Different Technologies
            For Converting Solar Energy To Alternating Current Electricity.**
16

17  Enphase and SolarEdge are direct competitors, and each makes products that enable the solar

18  energy collected by photovoltaic (PV) panels (i.e., solar panels) to be converted into alternating current

19  (AC) electricity that can be consumed on site, returned to the electric grid, or stored in batteries for

20  use at a later time by customers.  Declaration of Matthew Allan ("Allan Dec.") (filed herewith) ¶ 2.

21  Solar panels produce direct current (DC) electricity from the sun; Enphase and SolarEdge make

22  products that convert the DC electricity to AC, although neither company makes the panels

23  themselves.  *Id.*  But the two companies use different technologies in their solutions.  *Id.*

24  There are basically three methods of converting DC generated by a solar panel to AC.  Allan

25  Dec. ¶ 3.  A method used for decades involves a "string inverter"; the solar panels are arranged into

26  groups connected by "strings," and each is connected to a single inverter that converts DC to AC.  *Id.*

27  The inverter is a box that is typically mounted on an outside wall of the building.  *Id.*  A disadvantage

28  of the string inverter method is that if one panel is in shade, that will reduce the power output from the

entire string, not just the shaded panel.  *Id.*

The two other methods address that problem by using "module-level power electronics" (MLPEs), which are located at each solar panel (i.e., "module").  *Id.* ¶ 4.  SolarEdge and Enphase make different types of MLPEs, and each is available in standalone form or embedded in a panel.  *Id.*

SolarEdge's method uses an MLPE called a "power optimizer" with each individual panel, which "conditions" the DC electricity and sends it to the string inverter.  Allan Dec. ¶ 5.  It optimizes the power from each panel, so that if one panel's production declines (for example, because it is in shade), the other panels' production will not be affected.  *Id.*  The optimizers are connected to an inverter weighing about 25 lbs. that hangs on the side of the house.  *Id.* ¶ 7.  Most of SolarEdge's product line consists of standalone optimizers that must be mounted on a roof separate from the solar panels.  *Id.* ¶ 5.  This is the type of installation shown in the Time-Lapse Video.  SolarEdge also is an OEM supplier of power optimizers to solar panel manufacturers, which then embed them in the panel. *Id.*  As SolarEdge's General Counsel stated in her declaration, this "embedded" technology "is not yet commonplace," even though SolarEdge claims to have introduced it to solar panel manufacturers in 2011.  Declaration of Rachel Prishkolnik ("Prishkolnik Dec.") (Dkt. 8-22) ¶¶ 9, 10.

Enphase's method uses an MLPE called a microinverter.  Allan Dec. ¶ 8.  The microinverter is a two-stage conversion product, converting both the voltage level, as well as the DC electricity from the panel into AC, all within the same device.  *Id.*  The microinverter therefore does not require installation of a separate inverter on the side of the house.  *Id.*

### B.   How Enphase Conceived And Developed Its Truthful And Non-Misleading Time-Lapse Video Ad.

Both SolarEdge and Enphase engage in comparative advertising touting the benefits of their respective chosen technologies over the other's.  Allan Dec. ¶ 37.  In its comparative advertisements, SolarPhase uses the ENPHASE trademark to refer to Enphase's products.  *Id.*

Originally Enphase's microinverter was only produced as a standalone device that either bolted on to a rail mounted on the roof or bolted on to the solar panel.  Allan Dec. ¶ 8.  Then Enphase began developing an embedded microinverter to be sold to panel makers, the Enphase AC Module, which first became available to customers on July 11, 2017.  *Id.* ¶ 13.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

3.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

The AC Module's main advantage over standalone MLPEs is that the MLPE, being embedded in the panel, does not have to be installed on the roof separately, thus dramatically reducing installation time.  Allan Dec. ¶ 16.  This is a key benefit for installers, because it reduces their labor cost and allows them to do more jobs in a day.  *Id.*

 The AC Module also provides advantages over panels with SolarEdge's embedded power optimizer.  First, unlike the SolarEdge solution, there is no 25 lb. inverter box to install on the side of the building, thus eliminating the time necessary for that part of the job.  Allan Dec. ¶¶ 7, 8.  Second, if an Enphase embedded microinverter malfunctions, it can be swapped out and replaced in the field, while if a SolarEdge embedded power optimizer goes bad, the entire solar panel must be removed and replaced.  *Id.*  ¶¶ 14, 15.

Enphase got the idea for the Time-Lapse Video from a similar one produced and released by solar panel maker LG in or about October 2014, which compared installation times of an LG system with embedded microinverters and a system using Enphase's standalone microinverters, before Enphase had an embedded product.  Allan Dec. ¶ 11.  In 2017, after Enphase developed its embedded product and began partnering with LG and another panel maker, Jinko Solar, to supply its Enphase AC Module embedded microinverters, it decided to do a similar video comparison, between an AC Module system and a system with standalone MLPEs.  *Id.*  ¶¶ 13, 17.

Matt Allan of Enphase conceived of the video and put it together.   Allan Dec. ¶¶ 17, 18. Because SolarEdge is Enphase's main competitor, he made the comparison with a system using SolarEdge standalone optimizers, which represent the vast majority of what SolarEdge sells.  *Id.* ¶ 8.

To make the video, Allan located a home in Petaluma, California with a rooftop that was typical of home PV panel installations, and which had fixtures such as ventilators and skylights that the installers would have to work around.  Allan Dec. ¶ 22.  He found an installer who was experienced with installing both Enphase and SolarEdge products but had no prior experience with the Enphase AC Module.  *Id.*  ¶ 23.  The installer was not an employee of Enphase.  *Id*.  Enphase obtained a set of LG panels incorporating the Enphase embedded microinverter and a set of panels and SolarEdge standalone power optimizers for the demonstration installation.  *Id.*  ¶ 20.

The morning of the demonstration, Mr. Allan instructed an Enphase Field Application

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

4.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

Engineer to train the installer to install the AC Module; this took about 30 minutes.  Allan Dec. ¶ 24.
He then instructed the installer to follow his typical process to install the panels.  *Id.*  ¶ 25.

Normally the workers would haul all of the panels to the roof before beginning the installation.
Allan Dec. ¶ 28.  But Mr. Allan wanted the camera to focus on the workers, so instead of having them
take the panels to the roof, he handed them to the workers from off-screen.  *Id.*

The rails for the solar panels had already been mounted on the roof.   Allan Dec. ¶ 24.  The
workers first installed the SolarEdge system while the camera ran.  *Id*. ¶ 25. They then removed the
SolarEdge system and installed the Enphase AC Module system while the camera ran.  *Id*. The
demonstration showed that the SolarEdge system took over twice as long to install than the Enphase
system:  nearly one hour and 17 minutes versus just under 34 minutes.  *Id.*

Allan then asked the installer to provide his observations about the installation on camera.
Allan Dec. ¶ 26.  The installer's comments were his own; Enphase did not script them.  *Id*. ¶ 27.  In
the video the installer said, among other things:

> Do I see a time difference between the two systems? Absolutely, yes. Yeah,
> it's a—it's a plug and play. It's lay a panel down and go to the next one, very fast
> installation. I like it. There is no comparison. You're—you're skipping all these steps.
> The micro is already attached to the panel. I don't have to worry about laying out
> optimizers or micros on a rail, and obviously Enphase doesn't have an inverter
> hanging on the side of your wall, that's, that's one less thing, that's what I like.  It
> was easy to manage, didn't have to bring some PV wire out.

*Id*. ¶ 26.

According to SolarEdge's website, a typical inverter required for a SolarEdge residential
installation – either with embedded or standalone optimizers – would measure about 17.7H x 14.6W
x 6.8D (in inches) and weigh about 25.3 pounds.  Allan Dec. ¶ 7.  Because the video did not include
the time to mount an inverter to the side of the house and connect it, the comparison in the video
actually *understated* the difference in installation time between the two systems.  *Id.* ¶ 28.

The primary message the video conveys is that the AC Module panels are quicker to install
than panels using standalone MLPEs in general.   Allan Dec. ¶ 31.  The video begins with the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

5.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

ENPHASE trademark and logo and fades to a title screen reading "Enphase Energized AC Module vs. String+Optimizers / Time Lapse Field Test." *Id.* ¶ 32. "String+Optimizers" is shorthand that experienced installers of rooftop PV systems would understand to mean a system using panels connected in string formation, standalone optimizers and an inverter box. *Id.*

The video follows with the installer introducing himself and describing his experience with over 1,000 installations. Allan Dec. ¶ 33. It then shows the time-lapse comparison of the installations of the two systems, identifying each by its respective logo format trademark. *Id.* As the time-lapse comparison proceeds, the installer appears in an inset box providing his observations. *Id.* The video finishes with a screen reading "The Enphase Energized AC Module cuts installation time in half," followed by a final screen reading "ENPHASE / Simply Smart Solar." *Id.*

The SolarEdge name only appears twice in the video: first, when the installer describes his company's experience ("We install Enphase, we install SolarEdge, Sunpower"), and second, in the half of the split-screen showing the SolarEdge part of the installation comparison, in logo form. Allan Dec. ¶ 34. Each case is a truthful, nominative reference to SolarEdge. *Id.*

SolarEdge asserts on page 10 of its memorandum that the video "necessarily implies that SolarEdge power optimizers are not available in embedded form." Pl. Mem. at 10. But nowhere does the video say that SolarEdge does not provide embedded MLPE products, nor does it make that implication. Allan Dec. ¶ 34. No ordinarily prudent installer of rooftop PV systems would come away from the video with that impression. *Id.*

Mr. Allan created the video with the intent that it would be targeted to installers of rooftop PV systems. Allan Dec. ¶ 29. Enphase posted it to its website, Facebook page, Twitter feed, and YouTube, because most of the audience for its social media consists of installers. *Id.* ¶ 36. SolarEdge likewise targets its advertising to installers. *Id.* ¶ 37.

Installers typically get the rooftop PV systems they install from distributors, and experienced installers are, in general, well informed about the various products available to them. *Id.* ¶ 30.

SolarEdge asserts on page 12 of its brief that the video "obscures the fact that non-embedded SolarEdge products are being compared with embedded Enphase products." Pl. Mem. at 12. Yet an experienced installer would readily see from the video that the comparison in the Time-Lapse Video

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

6.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1   is between the Enphase AC Module and a SolarEdge system using standalone power optimizers.  Allan

2   Dec. ¶ 36.  It would be obvious to the installer that the SolarEdge system in the comparison has

3   standalone optimizers from the fact that the video shows the workers laying down the optimizers

4   before installing the panels and because the installer on camera mentions not having to "worry about

5   laying out optimizers or micros on a rail" with the Enphase system.  *Id.*

6   SolarEdge's General Counsel Prishkolnik opines in Paragraph 17 of her declaration that if

7   Enphase had compared its AC Module product with panels incorporating SolarEdge embedded power

8   optimizers, "the differential in installation time, if any, would be substantially smaller, and the

9   SolarEdge-based system might install faster than the Enphase-based system."  Prishkolnik Dec. ¶ 17.

10   But she offers no evidentiary support for her opinion, which also fails to account for the extra time

11   that workers installing the SolarEdge-based system would need to install and connect the inverter.  *Id.*

12   Ms. Prishkolnik opines in Paragraph 18 of her declaration that the comparison "will likely lead

13   both installers and end users that are evaluating the time of installation as a determining factor for

14   product preference to favor Enphase products over SolarEdge products" when there are "many factors,

15   including installation time as but one example, that can be used in assessing the relative merits of

16   different PV systems." Prishkolnik Dec. ¶ 18. Again, she offers no evidentiary support for her opinion

17   that the comparison would cause installers and end users to use time of installation as a "determining

18   factor," to the exclusion of other factors.  *Id.*

19   Ms. Prishkolnik speculates that "An end user might conclude based on the Time-Lapse Video

20   that, with all other factors being equal, reduced time spent installing could mean a lower installation

21   cost."  Prishkolnik Dec. ¶ 18.  The video makes no such claim; moreover, it is targeted to installers,

22   not end users, and Ms. Prishkolnik offers no evidence to support her opinion.  *Id.*

23   Nor does she contend that the alleged implication "reduced time spent installing could mean a

24   lower installation cost" is false.  *Id.*  To the contrary, time is money when paying workers by the hour,

25   and it would be reasonable to infer that a system that is quicker to install would reduce the installer's

26   labor cost, which could enable an installer to charge less for installation.  Allan Dec. ¶ 16.

27   In Paragraph 20 of her declaration, Ms. Prishkolnik speculates that "if an installer were to

28   invest time and resources learning Enphase's system the installer may be reluctant to later invest time

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

7.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1    and resources learning SolarEdge's system." Prishkolnik Dec. ¶ 20. Again, she offers no evidentiary

2    support for her opinion. *Id*. The installer in the Time-Lapse Video learned how to install the Enphase

3    AC Module system in half an hour before the demonstration began. Allan Dec. ¶ 24. Ms. Prishkolnik

4    does not allege that installing the SolarEdge system is any harder to learn, nor does she provide

5    evidence of the time it would take an installer to learn how.

6         More to the point, there is no basis on which one could reasonably infer that a substantial

7    number of installers would be "reluctant" to spend the time to learn how to install a SolarEdge system.

8    The installer in the Time-Lapse Video said that he installed Enphase, SolarEdge, and SunPower

9    systems, and an installer who opted not to take the time to learn how to install a SolarEdge system

10   would unreasonably restrict his or her own business opportunities. Allan Dec. ¶¶ 30, 34.

11        Ms. Prishkolnik speculates in Paragraph 21 of her declaration that the installer's comment

12   about the "need [in a SolarEdge system] for 'an inverter hanging on the wall' that does not exist in the

13   Enphase solution" is "misleading" because Enphase's system "also requires the installation of a box

14   handing on the wall at the end-user's location – a device called the Enphse Envoy – which is used for

15   monitoring the Enphase components installed at the end user's location and communicating with

16   Enphase's servers." Prishkolnik Dec. ¶ 21. This itself is misleading. The Enphase Envoy is not

17   analogous to the inverter in a SolarEdge system. Allan Dec. ¶ 9. It is not required in order to enable

18   an Enphase system to generate power and provide it to the grid. *Id*. It is an optional device that

19   enables monitoring and communication, and is a small box measuring just 21.3 x 12.6 x 4.5 cm (8 ¼

20   x 5 x 1 ¾ inches) and weighing just 498 grams or a little over one pound. *Id*. ¶ 10.

21        In Paragraph 23 of her declaration, Ms, Prishkolnik takes issue with the use of the phrase

22   "string optimizer system" in a July 14, 2017 letter from Enphase's counsel, calling it "not a term

23   commonly used in the PV industry." Prishkolnik Dec. ¶ 23. But the Time-Lapse Video does not use

24   that phrase – it says "String + Optimizers." Allan Dec. ¶ 32.

25   **C.    The Harm an Injunction Would Cause Enphase, Its Third-Party Partners, And Customers.**

26

27        As SolarEdge notes on page 18 of its memorandum, Enphase has struggled financially. Allan

28   Dec. ¶ 39. But Enphase believes that the Enphase AC Module is a "game-changer" product for the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929                    8.                    ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

company, especially as it has enabled it to partner for the first time with "tier 1" solar panel providers like LG and Jinko Solar.  *Id.*  Being able to advertise the benefits of the AC Module product and, in particular, the speed of its installation in comparison to a typical SolarEdge non-embedded optimizer system is critical toward its ability to reap the financial benefits of this innovation.  *Id.*

As Ms. Prishkolnik states in Paragraph 25 of her declaration, the Solar Power International trade show scheduled for September 10-13, 2017 in Las Vegas is the largest solar power trade show in North America, and nearly 1,000 companies and other organizations in the PV industry have already registered to attend this year's event.  Prishkolnik Dec. ¶ 25.  If Enphase is unable to show the Time-Lapse Video at or before this event, this will substantially harm its ability to promote its innovative technology at the most important industry event of the year, inevitably resulting in reduced sales of its flagship product.  Allan Dec. ¶ 41.

Moreover, if Enphase is unable to show the Time-Lapse Video, its partners, LG and Jinko Solar, will suffer, because potential customers will not be able to learn the benefits of the LG and Jinko Solar panels that use the Enphase embedded microinverter technology.  *Id.* ¶ 40.

Furthermore, if Enphase is unable to compete with SolarEdge by advertising its Enphase AC Module product, and SolarEdge succeeds in its apparent goal of marginalizing Enphase or driving it out of business, the public will suffer, by the loss of competition.  *Id.* ¶ 42.

## III.  SOLAREDGE HAS NOT MET THE STANDARD FOR GRANTING INJUNCTIVE RELIEF.

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Counsel, Inc.,* 555 U.S. 7, 24 (2008).  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief … pay[ing] particular regard for the public consequences.'"  *Id.* (quoting *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987)).

SolarEdge argues that it need only "make a showing" on four elements in order to obtain a preliminary injunction. Pl. Mem. at 7.  Yet the Supreme Court has held that a plaintiff seeking such relief "*must establish* that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter,* 555 U.S. at 20 (emphasis added).  And even though the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

9.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

Ninth Circuit has held since *Winter* that a stronger showing of one element may offset a weaker showing on another, *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134 (9th Cir. 2011), SolarEdge has not made even a minimal showing on each of these elements.

## IV. SOLAREDGE HAS NOT ESTABLISHED THAT IT IS LIKELY TO SUCCEED ON THE MERITS.

### A. SolarEdge Has Failed To Show That The Ad Is Materially False Or Misleading, And Thus Is Not Likely To Succeed On The Merits Of Its False Advertising Claim.

The elements of a false advertising claim under Lanham Act section 43(a), 15 U.S.C. § 1125(a), are as SolarEdge has stated them at Page 8 of its brief, and listed in *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997).   Apart from the interstate commerce requirement, SolarEdge has failed to establish each of these elements because:

- It has not identified a specific, literally false statement in the video, nor a literally true but misleading statement, as *Southland Sod Farms* requires, but instead objects to implications the ad does not actually make.

- It has failed to show that a "substantial segment" of rooftop PV installers have been or are likely to be deceived by the video into thinking that (1) the comparison really is with SolarEdge's embedded MLPE product or (2) SolarEdge does not offer an embedded product.

- It has failed to identify any false or misleading representation in the video that would be material to an installer's purchasing decision.

- It has failed to provide proof that it has been or will likely be injured by the video, just unsupported speculation of harm.

#### 1. SolarEdge Has Failed To Identify Any Materially False or Misleading Statements In the Video; Rather It Objects To Purported Implications The Ad Does Not Actually Make.

SolarEdge does not actually contend that any statement in the video is "literally false."  Rather, it complains (1) that the ad *should have compared* the AC Module to unspecified "PV panels with embedded power optimizers" and (2) that the ad *"necessarily implies"* that SolarEdge power optimizers are not available in embedded form.  Pl. Mem. at 9-10 (emphasis added).  As to the first

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

10.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1   objection, SolarEdge misses the point of the video (that systems with panel-embedded MLPEs are

2   quicker to install than those with standalone MLPEs); moreover, it falsely presumes that SolarEdge

3   panels are comparable with the Enphase product.  As to the second, nothing in the video can reasonably

4   be interpreted as representing that SolarEdge does not have an embedded product.

5                    a.         The Video Is Not A "False Comparison Of Dissimilar Products"

6        SolarEdge does not dispute the core message of the video, which is that an Enphase AC Module

7   system takes half the time to install than a system using SolarEdge's standalone optimizers.  Instead,

8   it contends the ad "is a false comparison of dissimilar products:  It pits SolarEdge's non-embedded

9   power optimizers against Enphase's embedded microinverters," Pl. Mem. at 9, and argues "Had

10  Enphase tested the installation of PV panels with embedded power optimizers, the difference in

11  installation time, if any, would have been substantially smaller."  Pl. Mem. at 10.

12       Even if that were so, that would not render false or misleading the comparison that Enphase

13  *did* make.  SolarEdge argues that the video is false because it "is not reliable as a comparison between

14  the Enphase product and optimizers generally," Pl. Mem. at 9-10, but the video does not purport to be

15  such a comparison.

16       It is obvious that this is a comparison of the new Enphase system with one employing

17  standalone power optimizers and not with panels having embedded optimizers.  Any ordinarily

18  prudent installer viewing the video would immediately see the workers laying out the power

19  optimizers on the rails before installing the panels.  Allan Decl. ¶ 36.  The installer speaking in the

20  video makes this clear, as he explains the differences between the two installations: "[with the Enphase

21  system] you're skipping all these steps.  The micro [inverter] is already attached to the panel.  I don't

22  have to worry about laying out optimizers or micros on a rail."  Pl. Mem. Exh. 8 (Dkt. 8-8) at 3].

23       SolarEdge suggests that Enphase should instead have compared installation time for the

24  Enphase AC Module with that for panels including SolarEdge embedded power optimizers, arguing

25  that they are "the equivalent product."  Pl. Mem. at 10.  But the video does not purport to compare

26  Enphase and SolarEdge products generally; the point of the video is to compare installation of

27  Enphase's embedded product with a system using standalone MLPEs.

28       Moreover, SolarEdge fails to identify which "equivalent product" of SolarEdge should have

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
148263929
11.
ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1    been used, nor does it offer any specifications of the product to confirm that it truly is "equivalent" to

2    the Enphase AC Module, nor does it provide evidence of sales or other data to show that the so-called

3    "equivalent" product is more representative of SolarEdge's offerings than the one in the video.

4        Furthermore, SolarEdge's embedded product necessarily is not equivalent to the Enphase AC

5    Module, among other things because SolarEdge's technology requires installation of the separate 25

6    lb. inverter box on the side of the house.  SolarEdge quibbles with an advertisement that truthfully

7    shows an advantage of Enphase's system, but has not established that the ad is false or misleading.

8                **b.    The Video Neither Represents Nor Implies That SolarEdge Lacks**
                 **An Embedded Power Optimizer Product.**
9

10       SolarEdge also argues that "Enphase's advertisement necessarily implies that SolarEdge power

11   optimizers are not available in embedded form," Pl. Mem. at 10, but this is not so. The ad makes no

12   such assertion, and this is not a reasonable inference one can take from the entire ad in context, which

13   is essentially an "embedded MLPE vs. standalone MLPE system" comparison.

14       SolarEdge calls out a headline adjacent to the video on the Enphase website reading "stop

15   wasting time installing optimizers" and argues that this "falsely and necessarily implies that embedded

16   SolarEdge power optimizers are unavailable."  Pl. Mem. at 11.  To the contrary, it obviously refers to

17   installing standalone power optimizers, because if the optimizers were already embedded in the panels,

18   there would be no reason to spend additional time "installing optimizers."

19       This is not analogous to *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.,* No. 91 Civ 731-CSH,

20   1982 WL 121559, at *1-2 (S.D.N.Y. Jun. 9, 1982), which SolarEdge cites in support of its proposition

21   at page 11 of its brief. In that case, a comparison ad between Robot-Coupe and Cuisinarts that claimed

22   that 21 three-star Michelin restaurants "choose the same professional model food processor"

23   understandably implied that both companies *did* offer such a product.  And as the court held, "that

24   statement was false, since it is undisputed that Cuisinarts does not market a professional model food

25   processor, confining itself entirely to processors for use in the home."  *Id.*  That would be as if Enphase

26   advertised that "100 percent of buyers of microinverter-based PV systems choose Enphase over

27   SolarEdge," obviously not what it advertised here.

28       Finally, nothing prevents SolarEdge from advertising that its power optimizers are available in

Cooley LLP
Attorneys At Law
San Francisco

148263929                                    12.                  **Enphase Energy's Response to
                                                                  Motion for Preliminary Injunction
                                                                  4:17-cv-04047-YGR**

1    embedded form.

2         **2.    SolarEdge Has Failed To Establish That The Video Is A Likely To Deceive**
          **A Substantial Segment Of Rooftop Solar Installers.**
3

4         SolarEdge tries to excuse its failure to prove that a "substantial segment" of rooftop PV

5    installers have been or are likely to be deceived by the video by arguing that when an advertisement

6    is "literally false," "consumer confusion and deception are presumed and need not be proven."  Pl.

7    Mem. at 11.  But SolarEdge is wrong when it asserts that the ad is "literally false" – in fact, it has not

8    even identified a "literally false" statement in the video.

9         SolarEdge cites *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.,* 32 F. Supp. 3d 1088, 1100 (N.D.

10   Cal. 2014) for the proposition that it need not prove that the video is deceptive.  But there the court

11   refused to presume confusion and deception because the plaintiff there, like SolarEdge, "has not

12   presented evidence of any literally false statement."  *Id.*  Like SolarEdge, the *Zeltiq* plaintiff also

13   attempted to avoid the evidentiary requirements for a misleading statement by contending that the ad

14   claims were "literally false by necessary implication."  *Id.*  But it too "submitted no evidence of

15   statements that necessarily imply" the point in question.  *Id.* at 1101.

16        SolarEdge also cites *Pom Wonderful LLC v. Purely Juice, Inc.,* No. CV-07-02633 CAS (JWJx),

17   2008 WL 4222045, at *11 (C.D. Cal. Jul. 17, 2008), in which the court assumed that the defendant's

18   "literally false" statements would actually mislead consumers.  But there the plaintiff demonstrated by

19   "independent tests performed by seven different laboratories" that the defendant's claim of "100%

20   pomegranate juice" was literally false. SolarEdge, by contrast, identifies no literally false statement of

21   objective fact, nor offers evidence of such falsity.

22        Next SolarEdge attempts to avoid having to prove that a substantial segment of installers are

23   likely to be deceived, by arguing that confusion and deception need not be proven where the defendant

24   "has engaged in a deliberate deception," Pl. Mem. at 11, citing  *Harper House, Inc. v. Thomas Nelson,*

25   *Inc.*, 889 F.2d 197, 209 (9th Cir. 1989),  *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258

26   (9th Cir. 1995), and *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).  As proof

27   of "deliberate deception," SolarEdge argues that "Enphase is surely aware that SolarEdge power

28   optimizers are available in embedded form, and yet Enphase deliberately chose to use non-embedded

1    optimizers to make it [sic] own product appear more appealing." Pl. Mem. at 11-12.

2         SolarEdge's premise is wrong. Enphase deliberately chose to use non-embedded optimizers

3    in order to make a comparison in installation times between panels with embedded MLPEs and panels

4    requiring separate, standalone MLPEs. That is not a deception.

5         Finally, SolarEdge argues that even if deception were not presumed, the video is likely to

6    deceive consumers (i.e., installers) because it (1) "obscures the fact that non-embedded SolarEdge

7    products are being compared with embedded Enphase products" and (2) "actively misrepresents that

8    the Enphase products can be installed in half the time as the equivalent SolarEdge products. Pl. Mem.

9    at 12. This is wrong because: (1) it would be obvious to any installer viewing the ad that the Enphase

10   MLPEs are embedded in the PV panels while the SolarEdge products are not and (2) SolarEdge does

11   not dispute that the Enphase system was installed in half the time as the system using SolarEdge

12   standalone optimizers – it just quibbles about what is an "equivalent" SolarEdge product.

13
14              **3.      SolarEdge Has Failed To Establish That The Video Contains A Deception
                          That Is Material To Installers' Purchasing Decision.**

15        SolarEdge essentially argues that the video is likely to influence installers to choose the

16   Enphase AC Module system "because it installs quickly" and because "reducing the time of

17   installation may reduce an installer's costs, increase efficiency, and increase the installer's profits."

18   Pl. Mem. at 12. Enphase agrees, and there is nothing insidious about that.

19        SolarEdge opines that "[e]nd-user customers are also likely to consider Enphase's claims

20   relating to the speed and ease of installation as a factor in their choice of PV system." Pl. Mem. at 13.

21   But as it also acknowledges, the video is targeted at installers, not end users, and what an end user

22   might take from the video is speculative. That said, it is self-evident that if an installer can install a

23   unit in less time, his or her labor costs would be reduced, and he or she can pass the savings on to the

24   customer.

25              **4.      Enphase Has Caused Its Advertisement To Enter Interstate Commerce.**

26        Enphase agrees.

27
28

5. **SolarEdge Has Failed To Show That A False Statement In The Time-Lapse Video Has Caused, Or Is Likely To Cause, A Diversion Of Its Sales Or A Loss Of Goodwill.**

The final element SolarEdge must prove to establish its false advertising claim is that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms,* 108 F.3d at 1139. SolarEdge speculates that because the video is targeted to installers and "explicitly names SolarEdge … as the source of the ostensibly inferior product," it "has likely already diverted sales and installer interest directly from SolarEdge to Enphase." Pl. Mem. at 14-15.

But there is nothing false or misleading about identifying SolarEdge as the source of the product compared in the ad. And if the ad causes installers to consider the Enphase AC Module instead of the SolarEdge system with standalone optimizers depicted in the ad, then that is the result of innovation and fair competition.

**B.** **Enphase Only Made Nominative Fair Use Of SolarEdge's Trademark, And Thus SolarEdge Is Not Likely To Succeed On The Merits Of Its Trademark Infringement Claim.**

The Ninth Circuit recently explained in *Multi Time Machine, Inc. v. Amazon.com, Inc.,* 804 F.3d 930, 935 (9th Cir. 2015) that:

> To prevail on a claim of trademark infringement under the Lanham Act, "a trademark holder must show that the defendant's use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,* 618 F.3d 1025, 1030 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(a)(1)-(a)(1)(A)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998). "The confusion must 'be probable, not simply a possibility.'" *Murray v. Cable NBC,* 86 F.3d 858, 861 (9th Cir. 1996).

Here, the "reasonably prudent consumer" is the installer of rooftop PV systems. And because the standard is "likelihood" of confusion, it is not enough that one, or a few installers might be confused; instead plaintiffs must demonstrate that "an appreciable number of ordinarily prudent

Cooley LLP
Attorneys At Law
San Francisco

148263929

15.

Enphase Energy's Response to
Motion for Preliminary Injunction
4:17-cv-04047-YGR

1   purchasers" is likely to be confused, in order to establish trademark infringement.  *Mushroom Makers,*
2   *Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied,* 439 U.S. 1116 (1979).

3       The Time-Lapse Video mentions the SOLAREDGE trademark in two places; first, when the
4   installer identifies SolarEdge as one of the manufacturers whose systems he installs, and second, in
5   the split-screen video, to show which installation is the one using SolarEdge components.  This is a
6   nominative fair use:  a use of the SOLAREDGE mark to refer to SolarEdge or its products.  No
7   reasonably prudent installer of rooftop PV systems would misunderstand that.

8       SolarEdge focuses on the video's use of the stylized form its trademark and notes that under
9   the Ninth Circuit's test for nominative fair use in *New Kids on the Block v. News Am. Publ'g, Inc.*, 971
10   F.2d 302, 308 (9th Cir. 1992), use of a stylized mark (i.e., logo form) may be taking "more" of the
11   mark than is reasonably necessary to identify the product or service, and thus not qualify as a
12   nominative use.   It offers the example of *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir.
13   2002), in which the court held that while it was a fair use of Playboy's PLAYMATE OF THE YEAR
14   trademark for a woman to publicize that she had received that distinction, it was not necessary for her
15   to use its "Bunny" logo, because that could mislead consumers into thinking Playboy approved of or
16   endorsed her activities.

17       But while that rule makes sense in a false endorsement context, it doesn't apply in comparative
18   advertising, where the context of the ad makes it very clear that the other company is *not* endorsing
19   the ad, but is the competitor being compared.  No reasonably prudent installer would think that the use
20   of the stylized form of the SOLAREDGE mark, in a comparison in which the SolarEdge product
21   comes out unfavorably, means that SolarEdge endorses the ad.  The installer would understand the
22   mark to identify SolarEdge as the source of the optimizers in the comparison.

23   **V.    SOLAREDGE HAS FAILED TO ESTABLISH THAT IT IS LIKELY TO SUFFER IRREPARABLE**
24   **HARM IF ENPHASE IS NOT ENJOINED.**

25       To prove likelihood of irreparable harm for a preliminary injunction in a trademark
26   infringement claim, a plaintiff must establish evidence of — rather than presume on the basis of
27   trademark infringement — irreparable harm.  *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt.,*
28   *Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013).  This rule also applies to comparative false advertising

1    claims under Lanham Act Section 43(a).  *Ferring Pharms., Inc. v. Watson Pharms., Inc.,* 765 F.3d

2    205, 216 (3d Cir. 2014) (citing *Herb Reed,* 736 F.3d at 1242); *see also, VBS Distribution, Inc. v.*

3    *Nutivita Labs., Inc.*, No. SACV 16-01553-CJC (DFMx), 2017 WL 2404919, at *4 (C.D. Cal. Jan. 19,

4    2017) (applying *Herb Reed* in false advertising case). The *Herb Reed* court rejected as insufficient a

5    district court analysis of evidence of irreparable harm that is "cursory and conclusory" and

6    "pronouncements [that] are grounded in platitudes rather than evidence."  736 F.3d at 1250.  And yet,

7    conclusory statements and platitudes – from a *general counsel* no less, not a sales, finance, or

8    marketing professional – are all SolarEdge offers in support of its motion.

9        SolarEdge cites *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir.

10    2001) for the proposition that "Evidence of threatened loss of prospective customers or goodwill

11    certainly supports a finding of the possibility of irreparable harm."  But SolarEdge has not provided

12    evidence of such harm.  It speculates that the video "is likely to divert sales and customers directly

13    from SolarEdge to Enphase." Pl. Mem. at 17.  Yet even if the video prompted some installers to choose

14    the Enphase AC Module, that would be because the video truthfully demonstrates the relative benefits

15    of the product.

16        In *VBS,* like here, the plaintiff "offered only the self-serving declaration of its CEO stating that

17    it will lose goodwill because of consumer confusion," 2017 WL 2404919, at *5.  The court denied a

18    preliminary injunction, stating "these types of 'unsupported and conclusory statement[s]' are purely

19    speculative, and therefore are insufficient to demonstrate irreparable harm."  *Id.* (brackets in original)

20    (quoting *Williams v. Green Valley RV, Inc.,* No. 8:15-CV-01010-ODW-MRW, 2015 WL 4694075, at

21    *2 (C.D. Cal. Aug. 6, 2015).

22        SolarEdge also speculates that "if an installer makes an investment to learn the use of

23    Enphase's technology as a result of the Time-Lapse Video, that installer may choose not to make a

24    further investment to learn SolarEdge's technology, thereby imposing lasting and ongoing harm on

25    SolarEdge." Pl. Mem. at 17.  SolarEdge is really reaching here.  The entire point of the comparative

26    advertising is to persuade members of the target audience to choose one option over another.  In this

27    instance, the fact that an installer may, on viewing the Time-Lapse Video, decide to take the time to

28    learn more about the Enphase AC Module embedded system, does not necessarily mean he or she

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

17.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

would choose not to learn about SolarEdge's standalone optimizer system, especially given how much of the market SolarEdge has.  Furthermore, SolarEdge provided no evidence that the "investment" in time to learn its technology is particularly onerous, or that typical installers would give up the ability to install SolarEdge products in order to avoid taking the time to learn how.

Such speculation cannot suffice to establish irreparable harm.  In *San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*, 625 Fed. Appx. 322, 327 (9th Cir. 2015), the Ninth Circuit vacated a permanent injunction where the district court's finding of irreparable harm was "based on the speculation that [the requesting party] '*would* effectively lose control over [its] brand,' not that it actually had." 625 Fed. Appx. at 317 (emphasis in original).  The Ninth Circuit criticized the district court for basing its injunction on a "prediction about the future, not a finding based on proof of actual harm needed to support the grant of an injunction."  *Id.*

The *Stuhlbarg* court cited *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 37-38 (2d Cir. 1995).  In that opinion, the Second Circuit provided a number of examples of other cases to illustrate when a finding of irreparable harm is or is not warranted, and then observed:

> These cases stand for the general proposition that irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial. Generally, where we have found no irreparable harm, the alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions. (citation omitted). In contrast, where we have found irreparable harm, the very viability of the plaintiff's business, (citation omitted) or substantial losses of sales beyond those of the terminated product, (citation omitted) have been threatened.

*Tom Doherty Assocs.,* 60 F.3d at 38.

Many courts post-*Herb Reed* have held that speculation like that offered here is insufficient. *See, e.g., Haas Automation, Inc. v. Denny*, CV 12-04779 CBM, 2014 WL 2966989, at *8–9 (C.D. Cal. July 1, 2014)

("Plaintiff has offered no evidence – such as lost profits or lost goodwill – to show that it has

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

18.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1  suffered irreparable harm."); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. CV 13-1395 GPC BLM, 2014

2  WL 2106482, at *4 (S.D. Cal. May 20, 2014) ("[B]esides a conclusory statement that Plaintiff will

3  suffer irreparable harm to its reputation and good will, Plaintiff has not provided any evidence to

4  support such a claim. Accordingly, this factor weighs against injunctive relief")(citation omitted).

5  SolarEdge has not established that the continued showing of the video threatens its "very

6  viability" or would cause any other irreparable harm. At most, it surmises that the video may "divert

7  sales and customers" from it to Enphase, Pl. Mem. at 17, and in the unlikely event that such diversion

8  is in fact found to be in some manner unlawful, that economic loss can certainly be compensated by

9  monetary relief.  Because SolarEdge has failed to provide evidence that would enable this Court to

10  make the "factual findings that would support a likelihood of irreparable harm" that the Ninth Circuit

11  requires, *Herb Reed,* 736 F.3d at 1251, the Court should deny this motion.

12  **VI.   SOLAREDGE FAILED TO ESTABLISH THAT THE BALANCE OF EQUITIES TIPS IN ITS FAVOR**

13  SolarEdge's argument that the balance of hardships tips in its favor assumes that Enphase's

14  video is materially false or misleading, when at most SolarEdge has shown that (1) the video compares

15  the Enphase AC Module to a SolarEdge product other than the one SolarEdge would prefer to see

16  compared and (2) the video does not state that SolarEdge offers an embedded power optimizer product.

17  SolarEdge's concerns can be addressed without an injunction.

18  If this Court denies the injunction, SolarEdge can always run its own ad comparing installation

19  times of a system with its embedded optimizers and a system with conventional Enphase standalone

20  microinverters (as long as it is truthful and takes into account the time needed to install the SolarEdge

21  inverter on the side of the house).  Or it can run an ad simply informing customers about the availability

22  of PV panels with its embedded optimizers.

23  But if the Court grants the injunction, Enphase will be unable to promote its "game changer"

24  AC Module product at the biggest trade show of the year, meaning that untold numbers of potential

25  customers will remain unaware of Enphase's innovation, inevitably depressing sales.  In its brief

26  SolarEdge describes at length Enphase's financial difficulties.  Pl. Mem. at 17-18.  Given the lack of

27  merit of SolarEdge's claims and its apparent anxiety about the competitive advantages of Enphase's

28  AC Module, one can reasonably ask whether SolarEdge hopes this injunction will level a knockout

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

148263929

19.

ENPHASE ENERGY'S RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION
4:17-CV-04047-YGR

1  blow at its rival at this critical time, to prevent Enphase from reversing its fortunes and rebuilding its

2  business, and thus eliminate a competitor.  There is no equity in that.

3  **VII.  SolarEdge Has Failed To Establish That the Requested Injunction Is In The Public Interest.**

4

5  Not only Enphase would suffer if the Court were to enjoin Enphase from using the Time-Lapse

6  Video.  Because the technology the video highlights is an OEM component of PV panels manufactured

7  by LG and Jinko Solar, if Enphase cannot advertise the benefits of the AC Module, these two partners

8  would suffer.  Moreover, by being deprived an opportunity to learn about and purchase a solution that

9  can reduce their installation costs, installers, and ultimately their end customers, would suffer.

10  **VIII.  Conclusion.**

11  Unable to identify any literally false statement in the Time-Lapse Video, SolarEdge proffers a

12  distorted and misleading characterization of the ad and a lawful, nominative use of its trademark, in

13  asking this Court to block its financially-troubled competitor from advertising its innovative new

14  product at the most important industry trade show of the year.  SolarEdge offers speculation instead

15  of evidence that the ad, if not enjoined, will cause it irreparable harm, when in fact it will be Enphase

16  who may well be harmed irreparably if an injunction issues.  SolarEdge's motion is not about

17  protecting customers from false advertising.  It is about trying to deal a severe blow to Enphase's

18  ability to compete fairly in the marketplace. The Court should deny SolarEdge's motion.

19  Respectfully submitted,

20  Dated:  July 26, 2017                COOLEY LLP
                                        JOHN W. CRITTENDEN (101634)
21                                      CHANTAL Z. HWANG (275236)

22

23                                      /s/ John W. Crittenden

24                                      John W. Crittenden (101634)
                                        Attorneys for Defendant
25                                      Enphase Energy, Inc.

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

148263929

20.

Enphase Energy's Response to
Motion for Preliminary Injunction
4:17-cv-04047-YGR