**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SOLAREDGE TECHNOLOGIES INC., ET AL.,**<br><br>Plaintiffs**,**<br><br>vs.<br><br>**ENPHASE ENERGY, INC.,**<br><br>Defendant**.** | CASE NO.  17-cv-04047-YGR<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 8, 15, 34 |

Plaintiffs SolarEdge Technologies Inc. and SolarEdge Technologies Ltd. (collectively, "SolarEdge") bring this action against defendant Enphase Energy Inc. ("Enphase") alleging violations under the Lanham Act for (i) false advertising, 15 U.S.C. section 1125(a) and (ii) trademark infringement, 15 U.S.C. section 1114.  (Dkt. No. 1.)  Concurrently with the filing of their complaint, plaintiffs filed an ex parte motion for a temporary restraining order ("TRO") and preliminary injunction.  (Dkt. No. 8.)  The Court denied plaintiffs' request for a TRO, but set the motion for an expedited hearing after briefing.  (Dkt. No. 15 at 2.)  Defendant filed its opposition on July 26, 2017 (Dkt. No. 27), and plaintiffs replied on July 31, 2017 (Dkt. No. 30).

Having carefully reviewed the pleadings, the papers and exhibits submitted on this motion, the parties' arguments at the hearing held on August 4, 2017, and for the reasons set forth more fully below, the Court **DENIES** plaintiffs' motion for a preliminary injunction.[1]

**I.  BACKGROUND**

Plaintiffs are in the business of "researching, developing, manufacturing, and selling electronic components for solar photovoltaic ('PV') modules, which are often referred to as 'solar panels.'"  (Dkt. No. 1, Compl. ¶ 8.)  Plaintiffs' primary products are components involved in the "optimization of energy generated from solar panels."  (*Id.* at ¶ 11.)  Similarly, defendant Enphase sells solar panel components and is a "direct competitor to Solar Edge."  (*Id.* at ¶ 20.)

---

[1] On August 2, 2017, the parties filed a stipulation permitting Matthew Allan to file a second declaration in support of defendant's opposition to the motion for a preliminary injunction, attaching the same as an exhibit.  (Dkt. No. 34.)  The Court **GRANTS** that stipulation and considers in full Allan's second declaration, attached thereto.

The following describes the relevant technology produced by both parties, as described in the filings:

PV modules are the solar panels "generally installed on rooftops that absorb and convert solar energy to direct electric current ('DC')." (*Id.* at ¶ 9.) The DC must be converted to alternating current ("AC"), which is then delivered to residences and businesses in the power grid. (*Id.*) A device called an "inverter" is utilized to perform this conversion. (*Id.*) Traditionally, competitors in the industry have utilized multiple solar panels, which are, in turn, connected to "one or a small number of centralized inverters for the DC to AC conversion." (*Id.* at ¶ 10.)

SolarEdge produces devices called "power optimizers," which are attached to each individual solar panel and then connected to a simplified centralized inverter to aid in a more efficient conversion of the generated energy from DC to AC. (*Id.* at ¶ 11.) This general practice of "situating electronics at the solar-panel level" is referred to as "module-level power electronics" or "MLPEs." (*Id.* at ¶ 12.) By contrast, Enphase uses "microinverter" technology, which attaches a "small inverter at each solar panel." (*Id.* at ¶ 21.) Both power optimizers and microinverters are categorically MLPEs.

Relevant to the instant dispute, MLPEs can come in two varieties, namely embedded and non-embedded. Essentially, an embedded MLPE is installed into the solar panel before it leaves the factory, thereby reducing the time "required to install a PV system at an end user's residential or commercial location, because it is no longer necessary to separately install a power optimizer or microinverter for each solar panel in the system." (*Id.* at ¶ 23.) Non-embedded MLPEs, on the other hand, must be installed on-site, requiring additional time. (*Id.* at ¶¶ 23–25.) Plaintiffs allege that SolarEdge has produced embedded power optimizers since 2012, but that it is still known "primarily for its non-embedded optimizers, as embedded technology is still not widely used in the PV industry." (*Id.* at ¶ 25.)

Recently, Enphase announced that it would be offering an embedded version of its microinverters, namely, the Enphase AC Module. (*Id.* at ¶¶ 26–27.) In connection with this announcement, Enphase launched an advertising campaign to promote its new product. (*Id.* at ¶ 27.) The campaign includes a video titled "Enphase Energized AC Module vs.

String+Optimizers," purporting "to depict a time-compressed video comparison between the installation times for PV systems using comparable SolarEdge and Enphase products." (*Id.* at ¶ 27.)[2]  The video is accompanied on Enphase's website with the text "Stop wasting time installing optimizers—When compared to optimizers, the Enphase AC Module cuts rooftop installation time in half.  See for yourself." (*Id.* at ¶ 30; *see also* Dkt. No. 8-9 at 3.)  In addition to depicting the time-lapse comparison, the video also features commentary from an installer, who provides a testimonial attesting to the ease of installing an AC Module panel as compared to a non-embedded SolarEdge power optimizer.  (Compl. ¶ 31; *see also* Dkt. No. 8-8 at 2–4.)  Finally, the video ends displaying the conclusion that the "Enphase Energized AC Module cuts installation time in half."  (Compl. ¶ 32; *see also* Dkt. No. 8-8 at 4.)  Plaintiffs allege that the advertisement is misleading because it compares AC Module against SolarEdge's non-embedded optimizer, rather than the embedded version, which SolarEdge also markets.  (*See* Dkt. No. 8-22, Prishkolnik Decl. ¶¶ 17–18.)  Additionally, the video includes SolarEdge's stylized logo, displayed throughout the video.  (Dkt. No. 8-8 at 3.)  Plaintiffs allege that they have utilized the stylized mark shown in the video as its primary logo and brand identifier for at least the last five years, and own registered trademarks in the same.  (Compl. ¶¶ 14–16.)

Plaintiffs further allege that defendant has released this advertisement campaign on its own website, Twitter, YouTube, and Facebook, and believes that defendant may have shown the video at the Intersolar North America tradeshow, held in San Francisco, California from July 10–13, 2017.  (*Id.* at ¶ 39.)  Finally, plaintiffs are concerned that defendant may utilize its allegedly false advertising campaign at Solar Power International, scheduled for September 10–13, 2017 in Las Vegas, Nevada and recognized as "the largest solar power trade show in North America." (Prishkolnik Decl. ¶¶ 25–26.)

---

[2] Subsequent to the hearing on plaintiffs' motion for a preliminary injunction, defendant voluntarily edited text on the video advertisement, its website, and YouTube.com, referring to the comparison as one between the AC Module and "String+Optimizers" to specify that the video is comparing Enphase's technology against "String+Standalone Optimizer Systems."  (Dkt. No. 37.)  Plaintiffs responded on August 8, 2017, arguing that the changes are insufficient and defendant continues to use SolarEdge's stylized mark.  (Dkt. No. 40.)

3

## II. LEGAL STANDARDS

A preliminary injunction is an extraordinary remedy, which should be granted only in limited circumstances and where the merits of the case plainly favor one party over the other. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

The Court considers four factors when evaluating motions for a preliminary injunction, namely whether: (1) the moving party has demonstrated that it is likely to succeed on the merits; (2) the moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the public interest favors granting relief. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). The plaintiff must make a threshold showing of likelihood of success on the merits and irreparable harm, but a stronger showing on one element may offset a weaker showing on another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011). In that regard, courts employ a sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135 (internal quotations omitted); *see also Herb Reed Enters., LLC v. Florida Entertainment Mgm't, Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013).

The burden of showing a likelihood of success on the merits is "placed on the party seeking to demonstrate entitlement to the extraordinary remedy of a preliminary injunction at an early stage of the litigation, before the defendant has had the opportunity to undertake extensive discovery or develop its defenses." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 714 *opinion amended on reh'g*, 508 F.3d 1146 (9th Cir. 2007).

## III. DISCUSSION

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1. False Advertising Claim

The elements of a false advertising claim under the Lanham Act are thus:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is

4

>material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also* 15 U.S.C. § 1125(a). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. A statement that is "literally false" may violate the Lanham Act "'without evidence of consumer deception,' while an implied falsehood may require some extrinsic evidence that the challenged statement has a tendency to mislead or confuse consumers." *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1100 (N.D. Cal. Mar. 25, 2014). To prove that an advertisement is literally false based on product testing, a plaintiff "must demonstrate that [the] tests 'are not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." *Southland Sod Farms*, 108 F.3d at 1039 (citations omitted). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* As such, "courts have held that a claim can be literally false by 'necessary implication.'" *Id.* (citation omitted).

For purposes of this motion, defendant explicitly concedes the fourth element of plaintiffs' false advertising claim, and appears to concede the materiality of the representation and that such advertising may divert sales from SolarEdge to Enphase, satisfying the third and fifth elements of plaintiffs' claim.[3] Plaintiffs' motion then hinges on the first element, wherein plaintiffs argue that certain statements in the advertising campaign at issue are "literally false," thereby negating the need to demonstrate the second element, *i.e.*, likelihood to mislead or confuse consumers.[4]

---

[3] *See* Dkt. No. 27 at 18, 23 ("And if the ad causes installers to consider Enphase AC Module instead of the SolarEdge system with standalone optimizers depicted in the ad, then that is the result of innovation and fair competition."); Allan Decl. ¶ 29 (acknowledging that the advertising would encourage installers to use the AC Module and that the installer's savings would ultimately be passed on to the end-user).

[4] Plaintiffs also argue that consumer confusion and deception need not be proven where the defendant engages in deliberate deception. *See William H. Morris Co. v. Group W, Inc.*, 66

Plaintiffs specifically complain that the heading and the introductory page of the allegedly offending video purports to compare the AC Module against "string+optimizers" generally. (Dkt. No. 8-8 at 2.) Additionally, text on the website states: "Stop wasting time installing optimizers. When compared to optimizers, the Enphase AC Module cuts rooftop installation time in half." (Dkt. No. 8-9 at 2.) Plaintiffs argue that such advertising is "literally false" because (i) the video compares the AC Module only against a non-embedded SolarEdge panel rather than optimizers generally and (ii) it implies that SolarEdge does not produce an embedded version of their technology.

The Court finds that the current state of the record is insufficient to support a finding that plaintiffs are likely to prevail on their false advertising claim. The target of defendant's advertising is a key issue in this litigation. Defendant contends that the marketing campaign was directed at experienced installers, who would immediately recognize that the installation being shown on the video involved a comparison between Enphase's embedded AC Module and SolarEdge's standalone power optimizer systems. Defendant also argues that statements on the website, such as "Stop wasting time *installing optimizers*," demonstrate that the advertisements are not literally false because there would be no need to install optimizers if Enphase were comparing its embedded technology against embedded optimizers. Furthermore, experienced installers would likely know that SolarEdge also produces an embedded version of their technology, and nothing in the video suggests that Enphase is the only producer of embedded MLPE technology.

Given the context presented at this stage, the Court finds that plaintiffs have failed to demonstrate that the allegedly offending advertising campaign contains "literally false" statements. Thus, plaintiffs would have to demonstrate that, despite the literal truth of the statements, the advertising campaign is likely to mislead or confuse. The record is lacking sufficient data and evidence in that regard. Accordingly, the Court finds that plaintiffs have failed to establish a likelihood of success as to this claim.

---

F.3d 255, 258 (9th Cir. 1995); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986). At this time, the record before the Court is lacking in this regard.

### 2. Trademark Infringement Claim

Plaintiffs bears the burden of proof on the following elements of the asserted claim: (i) the symbol or term is a valid, protectable trademark; (ii) plaintiffs own the trademark; and (iii) defendant's use of the mark without the consent of the plaintiff is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *Adobe Sys., Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) ("[A] trademark holder must show that the defendant's use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'" (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010))); *see also* 9th Cir. Model Jury Instruction 15.6 Infringement—Elements and Burden of Proof—Trademark (updated July 2017). "The 'core element of trademark infringement' is '[p]rotecting against a likelihood of confusion,' which helps to 'ensur[e] that owners of trademarks can benefit from the goodwill associated with their marks' and 'that consumers can distinguish among competing producers.'" *Adobe Systems*, 809 F.3d at 1081 (citations omitted).

Where, as here, a defendant uses a mark to refer to the trademarked good itself, the Ninth Circuit has recognized a "nominative fair use" defense. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). "The doctrine *protects* a defendant 'where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one'" and may "be invoked 'where a defendant uses the mark to refer to the trademarked good itself.'" *Adobe Systems*, 809 F.3d at 1081 (citations omitted) (emphasis supplied). The Ninth Circuit applies the following test to determine whether a user is entitled to a "nominative fair use" defense:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) ("*NKOTB*"). The test is "designed to address the risk that nominative use of the mark will inspire a mistaken belief on the part of consumers that the speaker is sponsored or endorsed by the trademark

1    holder." *Toyota Motor*, 610 F.3d at 1176 ("Consumers may reasonably infer sponsorship or

2    endorsement if a company uses an unnecessary trademark or 'more' of a mark than necessary.").

3    If the nominative use satisfies the three-factor *NKOTB* test, the use does not infringe. *Id.*

4    However, if the use fails to satisfy all three factors, "the district court may order defendants to

5    modify their use of the mark so that all three factors are satisfied," but "it may not enjoin

6    nominative use of the mark altogether." *Id.* Said differently, while satisfying all the factors

7    necessarily negates trademark infringement liability, the failure to satisfy one of the factors does

8    not establish liability in and of itself. Plaintiffs must still demonstrate that they are likely to satisfy

9    the three elements for a trademark infringement claim, as set forth above.

10   Here, defendant's video utilizes plaintiffs' stylized logo in a comparative advertisement,

11   purporting to demonstrate that defendant's AC Module technology installs more quickly than

12   plaintiffs' technology. Plaintiffs argue that defendant's use of the mark fails to satisfy all three

13   factors of the *NKOTB* test. The Court does not agree. In any event, plaintiffs raise no arguments

14   pertaining to their affirmative case. Plaintiffs have failed to demonstrate that defendant's use of

15   SolarEdge's logo for purposes of a comparative advertisement "inspire a mistaken belief" of

16   sponsorship or endorsement by SolarEdge. Similarly, the record does not show evidence of

17   confusion under the third element to prove a trademark claim.

18   Accordingly, the Court finds that plaintiffs have not shown likelihood of success on the

19   merits of their trademark infringement claim.

20   **B.    LIKELIHOOD OF IRREPARABLE HARM**

21   To obtain a preliminary injunction, plaintiffs must "demonstrate a likelihood of irreparable

22   injury," more than a mere possibility. *Winter*, 555 U.S. at 21. To establish a likelihood of

23   irreparable harm, conclusory or speculative allegations are not sufficient. *Herb Reed*, 736 F.3d at

24   1250 (holding that pronouncements "grounded in platitudes rather than evidence" are insufficient);

25   *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (holding that

26   "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a

27   preliminary injunction" and adding that a "plaintiff must *demonstrate* immediate threatened injury

28   as a prerequisite to preliminary injunctive relief" (emphasis in original)). "Price erosion, loss of

1  goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding
2  irreparable harm." *Blackberry Ltd. v. Typo Prods. LLC*, No. 14-CV-00023-WHO, 2014 WL
3  1318689, at *11 (N.D. Cal. Mar. 28, 2014) (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664
4  F.3d 922, 930 (Fed. Cir. 2012)).

5  Plaintiffs raise two arguments:  First, plaintiffs argue that defendant's false advertising is
6  likely to divert sales and customers directly from SolarEdge to Enphase, particularly if defendant
7  is allowed to air the allegedly fraudulent advertisement at Solar Power International, one of the
8  largest trade shows in the industry.  *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.,*
9  *Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or
10 goodwill certainly supports a finding of the possibility of irreparable harm.").  Second, even if
11 monetary damages were sufficient, defendant is unlikely to be able to pay damages here, given
12 that it has faced significant financial difficulties of late.  *See, e.g.*, *Microsoft Corp. v. Premier*
13 *Selling Techs.*, No. 15-CV-463-RAJ, 2015 WL 1408915, at *3 (W.D. Wash. Mar. 26, 2015)
14 ("That Microsoft is unlikely to obtain monetary relief is further evidence of irreparable harm.").

15 Defendant argues that plaintiffs lack any evidence demonstrating that they are likely to
16 suffer irreparable harm.  *See VBS Distr., Inc. v. Nutivita Labs., Inc.*, No. 16-CV-1553-CJC, 2017
17 WL 2404919, at *5 (C.D. Cal. Jan. 19, 2017) (stating that while "loss of goodwill and reputation"
18 can constitute irreparable harm, the "self-serving declaration of [defendant's] CEO stating that it
19 will lose goodwill because of consumer confusion" was conclusory, unsupported, purely
20 speculative, and therefore, insufficient); *see also Wahoo Intern., Inc. v. Phix Doctor, Inc.*, No. 13-
21 CV-1395-GPC, 2014 WL 2106482, at *4 (S.D. Cal. May 20, 2014) ("In addition, besides a
22 conclusory statement that Plaintiff will suffer irreparable harm to its reputation and good will,
23 Plaintiff has not provided any evidence to support such a claim.").

24 The Court finds that plaintiffs have made only a bare, threshold showing that they are
25 likely to suffer irreparable harm.  *See Alliance for Wild Rockies*, 632 F.3d at 1131–33 (holding that
26 plaintiffs must make a threshold showing of likelihood of success on the merits and irreparable
27 harm, but a stronger showing on one element may offset a weaker showing on another).  While
28 statements from Ms. Prishkolnik, a SolarEdge executive, may constitute evidence that plaintiffs

are likely to suffer irreparable harm, *see, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 975–76 (C.D. Cal. Dec. 12, 2016) (finding sworn statements from senior executive describing potential harm sufficient), the record lacks any data that support her conclusions.

Moreover, defendant's subsequent modification of the advertisements to clarify that the video is comparing the AC Module against non-embedded, standalone optimizer systems, as discussed above, minimizes the likelihood that any irreparable harm would befall plaintiffs. Plaintiffs conceded at oral argument that similar modifications would address their concerns regarding the allegedly misleading nature of the advertising campaign.[5]  Additionally, the Court has set this matter for an expedited trial schedule, further minimizing any risks.

Because plaintiffs have made only a threshold showing on irreparable harm and have failed to demonstrate a likelihood of success as to either of their claims, the Court need not address the remaining factors for determining whether a preliminary injunction should issue.  *See Alliance for Wild Rockies*, 632 F.3d at 1131–35 (explaining that under *Winter*, plaintiffs must make a showing on all four prongs to prevail on a motion for a preliminary injunction, but that "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction so long as plaintiff" has made threshold showings on a elements).

Accordingly, the Court **DENIES** plaintiffs' motion for a preliminary injunction.

## IV.  CONCLUSION

Thus, the Court finds that plaintiffs have failed to satisfy the requirements for a preliminary injunction, and, thus, **DENIES** plaintiffs' motion for the same.  The Court will address scheduling issues in a separate order, including those referenced in Docket No. 43.

This Order terminates Docket Numbers 8 and 34.

**IT IS SO ORDERED.**

Dated: August 11, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] Plaintiffs have subsequently argued that the modifications made by defendant are insufficient to address the allegedly deceptive advertising.